# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN SKINNER, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:07-CV-96-LMB |
| PEMISCOT COUNTY, MISSOURI, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion for summary judgment [Doc. #27]. Plaintiff brought this action under 42 U.S.C. § 1983 against Pemiscot County, Missouri, and Laurie Rudd ("Head Jailer") for the allegedly unconstitutional conditions of his confinement at the Pemiscot County Jail ("PCJ") in 2001.[1] Defendants have moved for summary judgment on the merits of plaintiff's claims, asserting that he cannot show he was subjected to a constitutional deprivation. In addition to their motion for summary judgment, defendants have submitted portions of plaintiff's deposition, defendant Rudd's answers to interrogatories, and the affidavits of Laurie Rudd and Jerry Carter, the current Chief Jailer of the Pemiscot County Justice Center.[2] Plaintiff did not respond to

---

[1] Because plaintiff's allegations arise out of his confinement while he was a pretrial detainee, his claims will be analyzed under the Fourteenth Amendment's Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

[2] Jerry Carter states that he has been employed by the Pemiscot County Sheriff's Department since 1989. In 2001, he was a Captain with the Pemiscot County Sheriff's Department. He explains that "[t]he old Pemiscot County Sheriff's Department and Jail, which John Skinner was in [sic] 2001, was replaced by a new Pemiscot County Justice Center in 2002 and the old Sheriff's Office and Jail has been subsequently torn down."

defendants' motion for summary judgment and his time for doing so has now passed. For the following reasons, the Court will grant defendants' motion for summary judgment.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Fed.R.Civ.P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 257; Heisler v. Metropolitan Council, 339 F.3d 622, 626 (8th Cir. 2003). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Background**

Plaintiff alleges in his complaint that, after being arrested on August 28, 2001, he was detained at the PCJ as a pretrial detainee. He was seventeen years old. Plaintiff further alleges that during the time he was detained at the PCJ, he was subjected to unconstitutional conditions of confinement, to wit: PCJ lacked a proper ventilation system; PCJ was infested with mice and roaches; the mattresses were dirty and smelly and only one cover was issued; no outdoor exercise or recreation was provided; he stayed in a cell with no windows and the walls and ceiling were stained by tobacco smoke; there was no hot water; the meals were nutritionally inadequate; there was no classification system in place, causing plaintiff to be housed with a violent person who threatened him; and it was difficult to summon the guards in case of an emergency. Plaintiff states that, as a result of the conditions of confinement, he spent fifty-seven days in constant fear for his safety.

**Facts**[3]

Plaintiff was confined at the PCJ from August 27 or 28, 2001, until November 6, 2001. Initially, he spent three or four days in a cell on the first floor with a person who was being held for first degree murder; this person did nothing to harm plaintiff during the time they were celled

---

[3] The Court adopts the statement of undisputed facts in support of the motion for summary judgment presented by defendants Pemiscot County, Missouri, and Laurie Rudd [Doc. #28]. The statement of facts is supported by portions of plaintiff's deposition, defendant Rudd's answers to interrogatories, and the affidavits of Laurie Rudd and Jerry Carter. Furthermore, plaintiff has not submitted a statement of disputed factual issues, nor has he responded to defendants' motion for summary judgment. Because plaintiff failed to submit a statement of material facts as to which he contends a genuine issue exists, as required by Local Rule 7-4.01(E), for purposes of this motion, plaintiff is deemed to have admitted all facts which were not specifically controverted. See Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D.Mo. 1999); see also Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005)(where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under Local Rule 7-4.01(E)).

together. Plaintiff complained that his mattress was dirty. In addition, he claimed to have had a lack of bedding while in the first cell.

Three or four days after his arrest, plaintiff was transported to Lakeland Regional Hospital in Springfield, Missouri, where he underwent a two-week mental health evaluation. Upon his return to PCJ, plaintiff was placed in a downstairs cell right next door to the jailer's office. Various people rotated through the cell, including an older man who was an amputee, an individual charged with either statutory rape or sodomy, and intoxicated persons. Approximately three weeks before plaintiff's release from jail in November 2001, he was transferred to an upstairs eight-man-pod-cell. The PCJ had windows upstairs, but not in the cells downstairs. Plaintiff complained of heat in the jail and a lack of ventilation. He also complained that the jail was infested with mice and roaches, the food was inadequate, there was no hot water, there were no jailers upstairs, and there was no outdoor exercise or recreation. Plaintiff further complained that a trustee, and not a nurse, would sometimes deliver his medicine. He believes that, on occasion, he may not have gotten all his medication; however, he does not know of any resulting adverse medical effects. Plaintiff filed no written complaints about any of the conditions of his confinement at PCJ.

The evidence provided by defendants shows the following: when an individual was brought to the PCJ in 2001, the jail would provide bedding along with a wool blanket. If plaintiff had needed additional bedding, it would have been provided for him. Moreover, any torn, damaged, or defaced mattresses were replaced and mattresses were disinfected between usages. The PCJ was not air-conditioned, but was equipped with five fans in ports within the jail, two upstairs and three downstairs. These were full-sized shop fans that circulated the air and ventilated the jail. The PCJ had a working forced air heating system that was used in the winter.

4

The PCJ contracted with an extermination company to spray for rodents and insects on a monthly basis, both inside and outside the jail. Moreover, the PCJ was equipped with a hot water tank and a mixing tank. The jail mixed the hot water from the hot water tank with cooler water in the mixing tank to be disbursed throughout the shower system, so inmates would not scald themselves, or others, while showering. The water was not extremely hot, but it was warm. The mixing tank was for the protection of inmates.

Jailers at the PCJ checked through the jail on routines. If an inmate needed something, he could contact the jailer as he/she made rounds. Alternatively, an inmate could contact a trustee or bang on the cell if something was needed. The PCJ did not have an outdoor exercise area; however, inmates could use the day rooms or jail cells for exercise. There was sufficient room in the cells to exercise, and plaintiff indicated that it would be possible to exercise in his jail cell.

In 2001, PCJ contracted with Sysco Food Service for the purchase of all its food, as well as the use of Sysco's dietician to set forth the various meals to be served in the jail for breakfast, lunch, and dinner. In addition, PCJ had two cooks who prepared the meals for the inmates. Plaintiff was given three meals a day, and he spoke with the jailer about getting more to eat. Breakfast consisted of toast, coffee, an egg, and sometimes a piece of bologna; lunch consisted of soup, bread, and Kool-Aid, juice, or something of that nature; and dinner consisted of soup and beans.

**Discussion**

A pretrial detainee's condition-of-confinement claims are analyzed under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Owens v. Scott Co. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003). A due process violation exists if the prison conditions constitute punishment. Bell, 441 U.S. at 536-39. "The infliction of punishment is

5

a deliberate act intended to chastise or deter." Wilson v. Seiter, 501 U.S. 294, 300 (1991) (quoting Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985)). "Punishment that 'deprive[s] inmates of the minimal civilized measures of life's necessities' is unconstitutional." Owens, 328 F.3d at 1027 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Although the Eighth Circuit Court of Appeals "has yet to establish a clear standard for pretrial detainees," Vaughn v. Green County, Ark., 438 F.3d 845, 850 (8th Cir. 2006), the Court has repeatedly applied the deliberate indifference standard of Estelle v. Gamble, 429 U.S. 97, 106 (1976), to a pretrial detainee's condition-of-confinement claims. See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on such a claim, "an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind." Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). In the context of a § 1983 claim, the objective element requires a showing that the prison official's act or omission resulted "in the denial of 'the minimal civilized measure of life's necessities.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quoting Rhodes, 452 U.S. at 347). The subjective element requires a showing of "deliberate indifference." Choate, 7 F.3d at 1373-74. Deliberate indifference, in turn, requires the "unnecessary and wanton infliction of pain." Id. at 1374 (quoting Givens v. Jones, 900 F.2d 1229, 1232 (8th Cir. 1990)(internal quotations omitted)). Mere negligence and inadvertence are insufficient to satisfy the deliberate indifference requirement. Id.

Defendants Pemiscot County and Laurie Rudd base their motion for summary judgment on the merits of plaintiff's allegations, asserting that none of his claims rise to the level of a Constitutional violation, and thus as a matter of law, they are entitled to summary judgment. Having

6

carefully reviewed the record, the Court agrees that plaintiff's confinement at PCJ simply was not constitutionally deficient; it did not amount to punishment.

More specifically, plaintiff claims that he was unconstitutionally housed with an alleged murderer, intoxicated persons, and a person charged with statutory rape or sodomy; however, the Eighth Circuit Court of Appeals has held that inmates do not enjoy their choice of cells, <u>Cole v. Benson</u>, 760 F.2d 226, 227 (8th Cir. 1985), and the classification of inmates is not a constitutional requirement, <u>Martin v. Tyson</u>, 845 F.2d 1451, 1456 (7th Cir. 1988). The undisputed facts establish that plaintiff was never abused or harmed by any of the individuals with whom he was housed. Defendants are entitled to summary judgment on this claim.

Moreover, defendants are also entitled to summary judgment on plaintiff's claims that his meals were deficient and the PCJ lacked adequate ventilation, clean bedding, hot water, and sanitary cells. The undisputed facts show that plaintiff received three meals a day and that the PCJ's food service provider employed the services of a dietician in preparing the menus, as well as two cooks. Plaintiff's conclusory allegation that the meals were not nutritious is insufficient to create a material fact issue on this point. In addition, the facts show that the PCJ's forced heating system and use of five large shop fans provided adequate circulation and ventilation. Plaintiff presented no facts as to what the temperatures were in the jail or how and in what respects the jail's ventilation system was deficient. Furthermore, the evidence shows that, upon his arrival at the PCJ in late August 2001, plaintiff had sheets and a wool blanket available to him. The evidence also shows that plaintiff's mattress would have been replaced had it been defaced or torn, and that it was sanitized before he used it. Laurie Rudd and Jerry Carter attested to the fact that the PCJ sprayed for rodents and insects on a monthly basis, and that the jail had a water mixing tank that provided warm, not hot, water. The

Constitution prohibits only those deprivations denying the "minimal civilized measure of life's necessities;" it does not mandate comfortable prisons. See Wilson v. Seitter, 501 U.S. at 298. As such, prison officials are required to ensure that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. at 832. The undisputed evidence before the Court shows that defendants met this requirement; there are no material issues of fact relative to defendants' alleged deliberate indifference.

Defendants are also entitled to summary judgment on plaintiff's lack-of-outdoor-recreation claim. Plaintiff stated in his deposition that it was possible for him to exercise in his cell and that he had the opportunity to do so. He does not claim that he suffered any injury as a result of not being able to exercise outdoors. The evidence simply does not create a material fact issue relative to defendants' alleged deliberate indifference to plaintiff's exercise needs. See Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992)(setting forth factors to consider in evaluating a lack-of-exercise claim).

Last, defendants are entitled to judgment on plaintiff's claim that the PCJ failed to have a jailer available to him at all times and allowed trustees, rather than nurses, to pass out medications. Plaintiff does not claim any resulting injury, and neither claim rises to the level of a constitutional violation. As such, the Court concludes that, as a matter of law, defendants Pemiscot County, Missouri, and Laurie Rudd are entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of defendants Pemiscot County, Missouri, and Laurie Rudd [Doc. #27] be and it is **GRANTED**.

A separate Judgment shall be filed with this Memorandum and Order.

*Lewis M. Blanton* (signature)
**LEWIS M. BLANTON**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 18th day of May, 2009.